### Black Hardeman *v* The State.

EVIDENCE.— See this case for evidence held insufficient to sustain a conviction for theft of a horse.

APPEAL from the District Court of Williamson.  Tried below before the Hon. W. A. BLACKBURN.

The indictment charged the appellant with the theft of an estray horse, whose owner was unknown.  His trial resulted in conviction, and he was adjudged a term of five years in the penitentiary.

Ira Harris testified for the State that he knew the horse alleged to have been stolen by the defendant.  He was a dun horse and ranged about the Chandler water-hole in Williamson county.  He had been known for several years as an estray.  In the spring of 1878 the witness penned the animal and cut a small piece off one ear.

Mr. Hodges, for the State, testified that he knew the animal, and had known it as an estray for six or seven years.  He had no mark when the witness first saw him, but afterwards had a small piece cut from one ear.  Mr. Dick Tisdale estrayed the horse in 1877.  The animal was then very wild, and unbroken.

Ed. Lewis testified for the State that he had known the horse for several years as an estray.  He last saw the horse in the spring of 1880.  Lewis Owens was then riding him.  The witness had a conversation with the defendant while working on the road in March or April,

1880, about a week before he saw Owens riding the horse. They talked about estray horses, and the witness spoke of the estray dun horse with the cropped ear. The defendant said the horse was " Old Magruder," a horse that got away from him some time before, and that he belonged to his cousin, Sam Hardeman. The witness spoke of the horse as an estray and described him before the defendant inquired about, or claimed him.

Lewis Owens testified for the State that the defendant hired him to ride a dun horse with a cropped ear in the spring of 1880. The defendant told the witness that he got the horse off the range, and that he had lost him some time before.

John Parnell testified for the defense that in the spring of 1876 Mat Cain was living on the witness's place in Travis county. During that spring the defendant stayed two or three weeks with Cain, and with Cain was engaged in assisting drovers to put their herds across the river, and in gathering stock dropped on the trail. He and Cain each had a dun horse which they said were owned by some parties who had gone on the trail. He and Cain left the witness's house together, saying they were going to take the horses to their owners. The witness did not notice that either of the dun horses had a cropped ear.

John Hughes testified, for the defense, that in the spring of 1880 he and George Clark were on the range looking for horses. They met the defendant, who told the witness that he was looking for a dun horse, and described him. They separated, the witness agreeing to drive up the horse if he saw him, and the defendant agreed to drive up that of the witness, should he find him. The witness found the crop-eared dun horse, drove him up and delivered him to the defendant. The defendant claimed the horse openly, and said that he bought him, and had lost him on the trail several years before.

Further testimony for the defense was to the effect that the defendant claimed the horse openly and publicly.

*Makemson, Fisher & Price,* and *A. W. Terrell,* for the appellant.

*H. Chilton,* Assistant Attorney General, for the State.

WHITE, P. J.   The facts proven upon the trial do not, in our opinion, tend to establish defendant's guilt of the theft charged with that degree of conclusiveness or certainty as that we are willing to let the conviction stand as a precedent for adjudications in criminal cases.   Defendant may be guilty, but his guilt should be established beyond mere suspicion or even strong probability.   In the view we take of the statement of facts there appears to be other evidence which, if accessible, may on another trial tend to throw more light upon the question of guilt or innocence.   As presented in this record, because the evidence is insufficient to support the verdict, the judgment is reversed and the cause remanded for a new trial.

*Reversed and remanded.*